IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALLAN J NICOLOW ET AL.,

      Plaintiffs,

  v.

HEWLETT PACKARD COMPANY ET AL.,

      Defendants.

Nos.   12-05980 CRB
       12-06003 CRB
       12-06074 CRB
       12-06410 CRB
       12-06199 CRB
       13-00301 CRB

**ORDER CONSOLIDATING CASES, APPOINTING LEAD PLAINTIFFS, AND APPOINTING LEAD COUNSEL AND INTERIM LEAD COUNSEL**

This sprawling litigation stems from Hewlett Packard Company's ("HP") botched acquisition of British software company Autonomy Corporation ("Autonomy"). HP acquired Autonomy for $10.2 billion in August 2011; about a year later, HP announced it was taking an $8.8 billion write-down due to accounting improprieties at Autonomy. HP's stock price dropped, and these lawsuits followed.

## I.    BACKGROUND

The cases before the Court fall into three categories: derivative shareholder suits, non-derivative securities class actions, and ERISA suits. Seven derivative actions have already been consolidated by stipulation, see No. 12-6003 dkt. 61, and no party has opposed motions now pending to separately consolidate the two non-derivative class-action cases, see No. 12-5980 dkts. 38, 57, and to separately consolidate the three ERISA cases, see No. 12-6199 dkt. 37.

The question before the Court is who will lead and represent the plaintiffs in the three different categories of cases. Though initially the numbers were higher, by the time the Court heard argument the field had narrowed to three competing movants seeking appointment as lead plaintiff in the securities class actions, see No. 12-5980 dkts. 38, 49, 57, and two competing to lead the derivative actions, see No. 12-6003 dkts. 18, 19. In the three ERISA actions, the plaintiffs joined in proposing a committee of interim lead class counsel. See No. 12-6199 dkt. 37.[1]

**II.    DISCUSSION**

**A.    Consolidation**

Federal Rule of Civil Procedure 42(a) permits consolidation where "actions before the court involve a common question of law or fact." Though all of the cases here stem from HP's acquisition of Autonomy and thus share common facts, the Court agrees with the parties that the legal issues underlying the three sets of cases are sufficiently distinct that consolidation into three separate actions is appropriate. No party opposed such consolidation in the moving papers or at the hearing on these motions.

Accordingly, the Court orders that:

1.     The following actions are consolidated pursuant to Federal Rule of Civil Procedure 42(a) for all purposes including, but not limited to, discovery, pretrial proceedings and trial proceedings:

| Abbreviated Case Name | Case Number |
| --- | --- |
| Nicolow v. Hewlett Packard Co. | C-12-5980 CRB |
| Pokoik v. Hewlett Packard Co. | C-12-6074 CRB |

2.     The consolidated cases shall be identified as: In re HP Securities Litigation and the files of this action shall be maintained in one file under Master File No. C-12-5980 CRB. Any other actions now pending or hereafter filed in this District which arise out of the same

---

[1]HP filed brief statements taking no position on the issues of lead plaintiff and lead counsel. See No. 12-6003 dkt. 27; No. 12-5980 dkt. 72.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

or similar facts and circumstances as alleged in these related actions shall be consolidated for all purposes as the Court is notified of them.  The parties shall notify the Court of any other action which is pending or filed outside of this District which may be related to the subject matter of these consolidated actions when they become aware of such actions.

3.      Every pleading filed in the consolidated action, or in any separate action included herein, shall bear the following caption:

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE HP SECURITIES LITIGATION,
_____/      Master File No. C-12-5980 CRB

This Document Relates To:                                      CLASS ACTION
_____/

4.      When a pleading is intended to be applicable to all actions to which this Order applies, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption described above.  When a pleading is not intended to apply to all actions, the docket number for each individual action to which the paper is intended to apply and the last name of the first-named plaintiff in said action shall appear immediately after the words "This Document Relates To:" in the caption identified above, for example, "No. C-12-6074 CRB (Pokoik)."

5.      The following actions are separately consolidated pursuant to Federal Rule of Civil Procedure 42(a) for all purposes including, but not limited to, discovery, pretrial proceedings and trial proceedings:

| Abbreviated Case Name | Case Number |
| --- | --- |
| Laffen v. Hewlett Packard Co. | C-12-6199 CRB |
| Lustig v. Whitman | C-12-6410 CRB |
| Kotyuk v. Hewlett-Packard Co. | C-13-0301 CRB |

6.      The consolidated cases shall be identified as: In re HP ERISA Litigation and the files of this action shall be maintained in one file under Master File No. C-12-6199 CRB.

3

**United States District Court**
For the Northern District of California

Any other actions now pending or hereafter filed in this District which arise out of the same or similar facts and circumstances as alleged in these related actions shall be consolidated for all purposes as the Court is notified of them.  The parties shall notify the Court of any other action which is pending or filed outside of this District which may be related to the subject matter of these consolidated actions when they become aware of such actions.

7.    Every pleading filed in the consolidated action, or in any separate action included herein, shall bear the following caption:

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE HP ERISA LITIGATION,

_____/            Master File No. C-12-6199 CRB

This Document Relates To:

_____/

8.    When a pleading is intended to be applicable to all actions to which this Order applies, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption described above.  When a pleading is not intended to apply to all actions, the docket number for each individual action to which the paper is intended to apply and the last name of the first-named plaintiff in said action shall appear immediately after the words "This Document Relates To:" in the caption identified above, for example, "No. C-12-6410 CRB (Lustig)."

**B.    The Securities Class Actions (Master File No. C-12-5980 CRB)**

The Private Securities Litigation Reform Act (PSLRA) requires that a lead plaintiff and lead counsel be appointed in the consolidated non-derivative securities class actions, and "provides a simple three-step process for identifying the lead plaintiff." In re Cavanaugh, 306 F.3d 726, 729 (9th Cir. 2002).  "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." Id.  At step two, the "district court must consider the losses allegedly suffered by the various plaintiffs," and select as the "presumptively most adequate plaintiff . . . the one who has the largest financial interest in the relief sought by the class and [who] otherwise satisfies the requirements of Rule 23 of the

Federal Rules of Civil Procedure." Id. at 730. In the third and final step, the court must "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." Id.; see generally 15 U.S.C. § 78u-4(a)(3)(B). The

> presumption . . . may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff–
> (aa) will not fairly and adequately protect the interests of the class; or
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

Id. § 78u-4(a)(3)(B)(iii)(II).

Notice of the suit having already been disseminated, three competing movants now seek appointment as lead plaintiff: (1) the Virginia Retirement System ("VRS"), see No. 12-5980 dkt. 57; (2) PGGM Vermogensbeheer B.V. ("PGGM"), the State of Oregon by and through the Oregon State Treasurer on behalf of the Common School Fund, the Oregon Public Employees Retirement Board, on behalf of the Oregon Public Employees Retirement Fund, and Oklahoma Public Emloyees Retirement Fund (collectively the "PGGM Group"), see No. 12-5980 dkt. 37; and (3) Central States, Southeast and Southwest Areas Pension Fund and the Strathclyde Pension Fund (collectively the "Central States Group"), see No. 12-5980 dkt. 49.[2] The first is a single institutional investor, and the latter two are groups of institutional investors.

Though the movants part company on a half dozen or so issues related to the determination of which one has the largest financial interest, the Court need only resolve two: the scope of the class period, and whether a "retained share" analysis is a proper method of measuring financial interest in this case.

Nicolow and Pokoik share an alleged class period of August 2011 to November 2012. Complicating matters, a third securities class-action was filed in this District during the briefing on the motions to appoint lead counsel. See Neumann v. Hewlett-Packard Co., No.

---

[2]Three sets of plaintiffs ("Wagner," "The Electrical Workers," and "The HP Investor Group") filed and then withdrew motions to represent the class, see No. 12-6074 dkt. 24; No. 12-5980 dkts. 38, 42, 68, 69, 70, conceding that other proposed lead plaintiffs had larger financial interests. The HP Investor Group's withdrawal expressly endorsed the PGGM Group as the proper lead plaintiff, see dkt. 70 at 3, while Wagner and The Electrical Workers took no position on who should win.

5

13-0284-EJD (N.D. Cal. filed Jan. 18, 2013). The complaint in Neumann included allegations regarding HP's acquisition of Autonomy, but also alleged a second theory of securities fraud involving misleading statements in connection with HP's Integrity server product line. The latter theory included statements stretching back to February 2008, see Compl., No. 13-0284 dkt. 1 ¶¶ 109-166, significantly expanding the class period as compared to Nicolow and Pokoik. But on February 13, 2013, Neumann voluntarily dismissed his suit. No. 13-0284 dkt. 14. It is unclear why.

VRS argues that the Court should still use the longer class period from Neumann in comparing the movants' financial interests, even though Neumann has been dismissed. See No. 12-5980 dkt. 84 at 1 n.2 (citing In re Gentiva Sec. Litig., 281 F.R.D. 108, 113-14 (S.D.N.Y. 2012)). This is not, however, a case like Gentiva or Karam v. Corinthian Colleges, Inc., No. 10-6523 (C.D. Cal. Mar. 30, 2011), mentioned by VRS during the hearing on these motions, where the longest class period alleged facts relevant to the theories advanced by the movants in the actions still pending before the court.

Rather, the longer period in Neumann related solely to the allegations concerning HP's Integrity server line–a theory now completely absent from this litigation. Using the longer period here would thus involve the nonsensical exercise of calculating "losses" occurring years before the fraud allegedly began. Accordingly, the Court will use the 2011-2012 class period relevant to the Autonomy allegations.[3]

The movants next disagree about the proper way to calculate financial interest. The Ninth Circuit has declined to endorse a particular method, instructing only that "the court may select accounting methods that are both rational and consistently applied." In re Cavanaugh, 306 F.3d at 730 n.4. District courts commonly refer to the four-factor Olsten-Lax test, which considers (1) total shares purchased, (2) net shares purchased, (3) net funds

---

[3]VRS alluded during the hearing to the possibility of movants manipulating the PSLRA analysis through strategic filings and dismissals aimed at redefining the class period. Though a legitimate concern, nothing in this case indicates that the Neumann dismissal involved collusion or a deliberate attempt to influence the outcome of the lead plaintiff selection in Nicolow and Pokoik.

expended, and (4) approximate losses suffered.  E.g., City of Royal Oak Ret. Sys. v. Juniper Networks, Inc., No. 11-CV-4003, 2012 WL 78780, at *4 (N.D. Cal. Jan 9, 2012).

The weight of authority puts the most emphasis on the competing movants' estimated losses, using a "last in, first out ("LIFO")[4] methodology.  See, e.g., Bruce v. Suntech Power Holdings Co., No. 12-4061, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012); City of Royal Oak, 2012 WL 78780, at *4; Foley v. Transocean Ltd., 272 F.R.D. 126, 127-28 (S.D.N.Y. 2011).  VRS did not dispute at the hearing that PGGM's $35.1 million LIFO loss was the largest–two million dollars higher than VRS' $33.1 million LIFO loss.

VRS, however, urges the Court to turn away from estimated losses and focus instead on "net shares purchased" and the related calculation of which movant has the largest potential recovery in the lawsuit as measured through a "retained shares" analysis.  See, e.g., Perlmutter v. Intuitive Surgical, Inc., No. 10-CV-03451, 2011 WL 566814, at *6-7 (N.D. Cal. Feb. 15, 2011) (describing retained shares calculation); Eichenholtz v. Verifone Holdings, Inc., No. 07-06140, 2012 WL 3925289, at *3-4 (N.D. Cal. Aug. 22, 2008).  Tellingly, VRS itself made no reference to net shares purchased or a retained shares calculation in its opening motion seeking appointment as lead plaintiff, shifting its argument only after PGGM came forward with larger LIFO losses.

Whether or not VRS is correct that a retained shares calculation may be preferable to a LIFO calculation in some cases, this is not such a case.  The allegations here involve multiple partial corrective disclosures by HP during the class period.  See No. 12-5980 dkt. 1 ¶¶ 41, 47, 51; 12-6074 dkt. 1 ¶ 51 (alleging partial disclosures on August 22, 2012, October 3, 2012, and November 20, 2012).  As many district courts have observed, net shares purchased and a "retained shares" calculation are less useful analytical tools where gradual disclosures are involved, because those methods assume a constant "fraud premium" throughout the class

[4]No movant has argued that the Court should use a first in, first out ("FIFO") rather than LIFO approach in assessing estimated losses.

period.[5]  The Court accordingly declines to give significant weight to net shares purchased and a retained shares calculation.

The third competing movant, the Central States Group, candidly concedes that it loses when estimated loss are emphasized, but points out that it leads in "net funds expended," and also that it did not sell any shares during the class period.  It cites not a single case, however, where a district court has relied on those factors to bump a competing movant with significantly larger losses, and this Court sees no reason to do so here.

In light of PGGM's status as the single entity with the greatest loss, the Court concludes that PGGM has the largest financial interest in the litigation.  Because PGGM appears to otherwise satisfy the requirements of Federal Rule of Civil Procedure 23, the Court also concludes that PGGM is the presumptive lead plaintiff.

In the third and final stage of the lead plaintiff analysis, VRS seeks to unseat PGGM by arguing that its fails the Rule 23 typicality and adequacy tests because it is subject to the unique defenses that it is a "net gainer" and "net seller."  Those arguments, however, depend on analysis of the 2008-2012 class period from the dismissed Neumann action, which this Court has already rejected.  PGGM asserted in its briefs and during the hearing–and VRS did not dispute–that PGGM was neither a "net seller" nor a "net gainer" during the shorter 2011-2012 class period.  Accordingly, the Court concludes that PGGM is not subject to any unique defenses, and VRS has not rebutted the statutory presumption that PGGM is the appropriate lead plaintiff.

One issue with PGGM's appointment remains: PGGM requested lead plaintiff appointment as part of a group of institutional investors, but the Court's discussion of PGGM has thus far ignored the claims of the other members of PGGM's proposed group.  Because PGGM has the largest financial interest without considering the interests of its fellow group members, the Court need not address whether a group of institutional investors with no

---

[5]See, e.g., In re Network Assocs., Inc. Sec. Litig., 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999); In re McKesson HBOC., Inc. Sec. Litig., 97 F. Supp. 2d 993, 997-98 (N.D. Cal. 1999); Ruland v. InfoSonics Corp., No. 06-CV-1231, 2006 WL 3746716, at *5(S.D. Cal. Oct. 23, 2006); Weiss v. Friedman, Billings, Ramsey Grp., Inc., No. 05-CV-4617, 2006 WL 197036, at *4 (S.D.N.Y. Jan. 25, 2006).

8

United States District Court
For the Northern District of California

meaningful prelitigation relationship can aggregate their claims to establish the "largest financial interest"–an issue that the Ninth Circuit has left open, In re Cavanaugh, 306 F.3d at 731 n.8, and that has divided district courts. Compare, e.g., In re Netflix, Inc. Sec. Litig., No. 12-0225-SC, 2012 WL 1496171, at *4 (N.D. Cal. Apr. 27, 2012), with, e.g., Barnet v. Elan Corp., 236 F.R.D. 158, 161-62 (S.D.N.Y. 2005); 1 McLaughlin on Class Actions § 4:34 n.42 (9th ed.) (noting split).

A related but distinct question is whether a lead plaintiff with the largest financial interest can assume the mantle of lead plaintiff as part of a group. Though the Court does not rule out the possibility that a group could be appointed under different circumstances, the Court sees no value in using the group proposed here. Other courts appointing groups have suggested that a relatively small, cohesive group of institutional investors might better accomplish the PSLRA's goal of having the plaintiffs exert meaningful control and supervision over plaintiffs' counsel. E.g., Bruce, 2012 WL 5927985, at *2.

This Court finds it equally likely that diluting the responsibility of the institutional investor with the largest financial interest will work against the PSLRA's goals. Though the Court accepts as true the PGGM Group's representations regarding its prelitigation formation and operation, see No. 12-5980 dkt. 40-3, Ex. C, the Court doubts its own ability to make a useful judgment as to the "cohesiveness" of groups like this one with no prelitigation relationship, and the Court is similarly skeptical that it can make an informed prediction of the proposed group's ability to better supervise its lawyers than the single member with the largest financial interest. Cf. Frias v. Dendreon Corp., 835 F. Supp. 2d 1067, 1072-74 (W.D. Wash. 2011); Sakhrani v. Brightpoint, Inc., 78 F. Supp. 2d 845, 850-54 (S.D. Ind. 1999). Accordingly, the Court declines to join PGGM Vermogensbeheer B.V. with its proposed group members, and instead appoints it as the sole Lead Plaintiff.

As Lead Plaintiff, PGGM has the statutory prerogative to select counsel for the class, subject to approval by the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). It has proposed that the law firms of Kessler Topaz Meltzer & Cheek LLP ("Kessler Topaz"), and Bernstein Litowitz Berger & Grossman LLP ("Bernstein Litowitz") serve as Co-Lead counsel; however, as

discussed in more detail below in the context of the derivative actions, the Court's skepticism of the propriety of a group leadership structure in this litigation carries over to the appointment of counsel. The Court accordingly appoints Bernstein Litowitz, which argued quite ably on behalf of PGGM at the hearing on these motions, as sole Lead Counsel, without prejudice to PGGM's ability to propose alternative sole Lead Counsel.

### C.   The Derivative Shareholder Actions (Master File No. 12-6003 CRB)

District courts regularly (but are not required to) appoint lead counsel in complex consolidated suits. See, e.g., Vincent v. Hughes Air West, Inc., 557 F.2d 759, 774 (9th Cir. 1979) (lead counsel); 9A Wright & Miller, Federal Practice & Procedure § 2385 (3d ed. 2008). The Manual for Complex Litigation–a previous version of which was cited by the Ninth Circuit on this issue in Vincent–suggests that courts consider the following factors in selecting lead counsel:

> (1) qualifications, functions, organization, and compensation of designated counsel;
> (2) whether there has been full disclosure of all agreements and understandings among counsel;
> (3) would-be designated attorneys' competence for assignments;
> (4) whether there are clear and satisfactory guidelines for compensation and reimbursement, and whether the arrangements for coordination among counsel are fair, reasonable, and efficient;
> (5) whether designated counsel fairly represent the various interests in the litigation–where diverse interests exist among the parties, the court may designate a committee of counsel representing different interests;
> (6) the attorneys' resources, commitment, and qualifications to accomplish the assigned tasks; and
> (7) the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court–experience in similar roles in other litigation may be useful, but an attorney may have generated personal antagonisms during prior proceedings that will undermine his or her effectiveness in the present case

Manual for Complex Litigation § 10.224 (4th ed. 2004).

Though no party has cited binding precedent authorizing the appointment of lead plaintiffs in derivative shareholder suits, district courts do that as well. E.g., Hacker v. Peterschmidt, No. 06-04524-SI, 2006 WL 2925683, at *5 (N.D. Cal. Oct. 12, 2006); cf. Fed. R. Civ. P. 23.1 & advisory committee note (requiring that plaintiff in derivative suit "fairly and adequately represent the interests of the shareholders" and referring to court's inherent

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

power to provide for the conduct of the proceedings). But see, e.g., Gallardo v. Bennett, No. 06-3864-JVT, 2006 WL 2884497 (N.D. Cal. 2006).

Courts in this circuit that have appointed lead plaintiffs have consulted the eight factors set out in Larson v. Dumke, 900 F.2d 1363, 1367 (9th Cir. 1990), which was not a case about competing lead plaintiffs but about whether a putative derivative plaintiff satisfied the criteria set out in Federal Rule of Civil Procedure 23.1 for who may maintain a derivative action.

The eight Larson factors are:

(1) indications that the plaintiff is not the true party in interest;
(2) the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit;
(3) the degree of control exercised by the attorneys over the litigation;
(4) the degree of support received by the plaintiff from other shareholders;
(5) the lack of any personal commitment to the action on the party of the representative plaintiff;
(6) the remedy sought by plaintiff in the derivative action;
(7) the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; and
(8) plaintiff's vindictiveness toward the defendants.

900 F.2d at 1367.

Other courts that select a lead plaintiff have looked to factors similar to those found in the PSLRA and the factors for selection of counsel set out in the Manual for Complex Litigation, such as the quality of the plaintiff's pleadings, the vigorousness of the plaintiff's efforts, the size of the plaintiff's financial interest, and a general preference for institutional investors. See Gallardo, 2006 WL 2884497 at *2 (citing cases).

Here, the Court concludes that appointment of lead counsel and plaintiff is warranted in light of the size and complexity of the consolidated derivative actions. Before the Court are two options: (1) Cotchett, Pitre & McCarthy, LLP ("Cotchett"), representing individual investor Stanley Morrical, and (2) Robbins Arroyo LLP ("Robbins") and Saxena White ("Saxena"), representing institutional investor City of Birmingham Retirement and Relief System ("Birmingham"). See No. 12-6003 dkts. 17, 19.

As for counsel, each received endorsements from two other parties not seeking appointment. Plaintiff Martin Bertisch filed a statement supporting Robbins, though his

filing spoke highly of both Cotchett and Robbins, see No. 12-6123 dkt. 21, and Plaintiff Senta Weissmann also supports Robbins.  See No. 12-6003 dkt. 62 at 3.  Plaintiffs Andrea Bascheri and Jim Chung filed a statement supporting Cotchett, and also spoke out in favor of Cotchett at the hearing on these motions, see No. 12-6091 dkt. 23–as did counsel for Joseph Tola, see No. 12-6434 dkt. 38-2.

After reviewing the papers from both sides and hearing argument on the motions, the Court concludes that all of the proposed counsel are well-qualified and have demonstrated the ability to provide the highest quality of representation through vigorous filings.  The Court also concludes that all have demonstrated reasonable approaches to investigation and pleading that fail to meaningfully differentiate the firms.[6]

Turning to the lead plaintiff debate, Birmingham and Morrical argue about their relative financial interest, sophistication, and ability to effectively manage counsel; the quality of their pleadings and pre-filing investigations; whether each has a potential professional conflict, and whether Birmingham has a "jurisdictional advantage" because it is from out-of-state.

As with the comparison of firms, the Court finds no meaningful difference between the two plaintiffs under any of the disputed criteria.  Both have a significant financial interest that would ensure vigorous prosecution of the action; both have filed quality, well-researched pleadings; and subject matter jurisdiction is not in doubt in these suits under federal securities laws.  No one suggests that either of the proposed lead plaintiffs falls short of the requirements of Rule 23.1.

At the hearing on these motions, counsel for Birmingham emphasized Birmingham's status as an institutional investor and the perceived advantages, reflected in the approach mandated by the PSLRA, of having an institution oversee plaintiffs' counsel.  The derivative actions, however, are not governed by the PSLRA, and the Court already has an institutional investor overseeing counsel in the class action arm of the litigation.  Also, this is a derivative

---

[6]That Robbins Arroyo is currently involved in a different derivative suit on behalf of HP in another district likewise fails to separate the firms; familiarity may bring certain efficiencies but a fresh perspective could also provide substantial benefits.

12

suit where the "client," ostensibly, is HP. Cotchett's client Morrical is a sophisticated investor with extensive relevant experience, see Morrical Decl., No. 12-6434 dkt. 17-2, and the Court is satisfied he would monitor the litigation appropriately.

The Court's choice of leadership thus turns on its judgment of which movant has demonstrated a superior ability to move this litigation forward effectively and efficiently, and to otherwise best serve the interests of the plaintiffs. Though a difficult decision, the Court finds that Morrical and his firm Cotchett have made the better showing, having received widespread, vocal recognition of their inclusive approach to working with other plaintiffs and co-counsel in this case, and having already delivered results in this litigation in the form of the final stipulation consolidating the seven derivative actions.[7] The Court therefore appoints Stanley Morrical as Lead Plaintiff.

As for designation of Lead Counsel, the Cotchett firm has proposed that it serve not as sole lead counsel, but as the head of a formal committee of counsel. This Court agrees with other district courts that have acknowledged the tendency of shared leadership structures to complicate, muddle, and otherwise bloat litigation. E.g., In re Jones Soda Co. Sec. Litig., No. 07-1366, 2008 WL 418002, at *3 (W.D. Wash. Feb. 12, 2008); In re Party City Sec. Litig., 189 F.R.D. 91, 114-15 (D.N.J. 1999).

Committees of counsel may nevertheless be appropriate where the clients' interests "are sufficiently dissimilar to justify giving them representation in decisionmaking," Manual for Complex Litigation § 10.221 (4th ed. 2004), or in other circumstances unique to a given case such as the inability of a single firm to handle the work. As noted above, however, the sole "client" in these derivative suits is theoretically HP, and at the hearing on these motions Cotchett assured the Court that it could handle the work.

The Court accordingly declines to endorse the proposed committee structure, and instead appoints the Cotchett firm as sole Lead Counsel.

---

[7]The Court need not consider what weight the "first filed" factor may carry in a tiebreak situation because this was not a tie.

United States District Court
For the Northern District of California

**D.      The ERISA Cases (Master File No. 12-6199 CRB)**

The Court's authority to appoint lead counsel is discussed above in connection with the derivative suits.  In addition, Federal Rule of Civil Procedure 23(g)(3) permits but does not require appointment of interim lead class counsel "if necessary to protect the interests of the putative class," such as in cases of rival putative class counsel or litigation problems caused by uncertainty in class leadership.  Fed. R. Civ. P. 23(g)(3) advisory committee's note.  The factors for selecting permanent class counsel set out in Rule 23(g)(1)(A) are:

> (1) the work counsel has done in identifying or investigating potential claims in the action;
> (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (3) counsel's knowledge of the applicable law; and
> (4) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Rule 23(g)(1)(B) also provides that the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

The plaintiffs in the three consolidated ERISA actions have joined in an unopposed motion proposing an executive committee of interim class counsel where four different firms have various roles in managing the litigation, including designations of "Co-Lead and Interim Counsel" and  "Liaison Counsel."  For the reasons already discussed, the Court declines to approve a committee structure.

When the Court expressed during the hearing on these motions a disinclination to approve a committee, no party objected to a suggestion by counsel that Zamansky & Associates be appointed as sole interm lead class counsel, though one of the four firms joining in the stipulation was not present at the hearing.  Accordingly, the Court appoints Zamansky & Associates as sole lead interim class counsel, but will entertain objections to that appointment or a revised stipulation among the plaintiffs in the ERISA actions specifying alternative sole lead interim counsel.

**III.     CONCLUSION**

The Court CONSOLIDATES the securities class actions and the ERISA actions separately as ordered above.

14

**United States District Court**
For the Northern District of California

In the consolidated securities class actions (Master File No. C-12-5980 CRB), the Court appoints PGGM Vermogensbeheer B.V. as Lead Plaintiff and Bernstein Litowitz as Lead Counsel. If it wishes, PGGM may propose alternative sole Lead Counsel by 5:00 p.m. on March 8, 2013.

In the consolidated derivative actions (Master File No. C-12-6003 CRB), the Court appoints Cotchett, Pitre & McCarthy LLP as Lead Counsel and Stanley Morrical as Lead Plaintiff.

In the consolidated ERISA actions (Master File No. C-12-6199 CRB), the Court appoints Zamansky & Associates as Interim Lead Counsel. Objections and any revised stipulation by plaintiffs in the ERISA actions are due by 5:00 p.m. on March 8, 2013.

**IT IS SO ORDERED.**

Dated: March 4, 2013

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2012\5980\Order re lead plaintiffs.wpd          15